# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) PAUL TRANSPORTATION, INC.,
   an Oklahoma corporation, and
(2) PAUL LOGISTICS, INC.,
   an Alabama corporation,

       Plaintiffs,

v.                                                                              No. 23-cv-00241-WPJ-SH

(1) RICHARD GAMBE, an individual, and
(2) JORDAN LOGISTICS, INC.,
   a Mississippi corporation

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court[1] upon Defendant Jordan Logistics, Inc.'s ("Defendant Jordan") motion to dismiss and brief in support (Docs. 20, 21), filed June 26, 2023. Plaintiffs Paul Transportation, Inc. and Paul Logistics, Inc. (collectively, "Plaintiff Company") timely responded (Doc. 30), to which Defendant Jordan replied (Doc. 34). Having reviewed the relevant documents, the parties' briefing, and the applicable law, the Court finds Defendant Jordan's motion is well-taken and, for the reasons that follow, grants the motion.

## BACKGROUND[2]

Plaintiffs Paul Transportation and Paul Logistics are, respectively, an Oklahoma corporation and an Alabama corporation. Doc. 2-1, at ¶¶ 1–2. They each have their principal place of business in Oklahoma. *Id.* With five brokerage satellite offices, Plaintiff Company is a premier

---

[1] Chief United States District Court Judge William P. Johnson of the District of New Mexico was assigned this case as a result of the Tenth Circuit Order designating Judge Johnson to hear and preside over cases in the Northern District of Oklahoma.

[2] The preceding recitation of facts derive from Plaintiff's complaint and accompanying affidavits, which the Court accepts as true. *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1226, 1228 (10th Cir. 2020).

truckload carrier that services flatbed, over dimensional, dry van, rail/intermodal, and refrigerated accounts. *Id.* at ¶ 7.

Defendant Richard Gambe, a citizen of Mississippi, used to work for Plaintiff Company. *Id.* at ¶¶ 3, 8. And on August 5, 2021, in Tulsa, Oklahoma, both he and Plaintiff Company entered into two agreements: the Confidentiality and Invention Assignment Agreement (the "First Agreement") and the Confidentiality, Non-Solicitation and Invention Assignment Agreement (the "Second Agreement"). *Id.* at ¶ 9. Briefly, the First Agreement prohibits Defendant Gambe from disclosing—directly or indirectly—confidential information and using such information outside the scope of his employment, and he must return or delete copies of such information upon termination. Doc. 2-1, at ¶¶ 10–15. The Second Agreement defines confidential information, emphasizes its competitive importance, prohibits Defendant Gambe from disclosing such information, and provides a non-solicitation period of two years following a termination. *Id.* at ¶¶ 16–23. These agreements were executed in Tulsa, Oklahoma, are governed by Oklahoma law, and contain an Oklahoma forum-selection clause. *Id.* at ¶¶ 15, 23; Doc. 30, Ex. 1, at ¶ 5 (Declaration of Spencer Williams).

At some point, Defendant Gambe's employment with Plaintiff Company was terminated. Doc. 2-1, at ¶¶ 8, 24. And at some point following his termination, Defendant Gambe began working for Defendant Jordan, a Mississippi corporation with its principal place of business in Mississippi. *Id.* at ¶¶ 4, 24; *see* Doc. 7 (Disclosure Statement). Plaintiff Company alleges that before Gambe's access to confidential information was revoked, he created copies of it, did not destroy it, and has utilized it for himself and Defendant Jordan. Doc. 2-1, at ¶ 25. Additionally, during the two-year non-solicitation period, Plaintiff alleges that Gambe solicited customers by

using the confidential information, thus benefiting Defendant Jordan at the Company's expense. *Id.* at ¶ 26.

Plaintiff Company makes some specific factual allegations against Defendant Jordan. It alleges that "Jordan has been informed of Mr. Gambe's contractual non-solicitation obligations and [has] been provided copies of the [Agreements]." *Id.* at ¶ 27. And that "Jordan has also been informed that Mr. Gambe has illegally taken and continued to use the Company's Confidential Information." *Id.*

Plaintiff Company filed suit in Oklahoma state court on May 17, 2023, against its former employee (Gambe) and the new employer (Jordan). *See id.* The action was removed to federal court shortly thereafter, based upon diversity of citizenship. Doc. 2, at 2. Specific to Defendant Jordan, Plaintiff Company alleges misappropriation of trade secrets (Doc. 2-1, at ¶¶ 42–50), aiding and abetting (*id.* at ¶¶ 52–55), tortious interference with contract (*id.* at ¶¶ 57–61), and injunctive relief (*id.* at ¶¶ 63–67). Defendant Jordan filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2), contending this Court lacks personal jurisdiction over it. Doc. 20.

## **STANDARD**

The Federal Rules allow a party to assert a defense by motion for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When personal jurisdiction is contested, it is the plaintiff's burden of establishing personal jurisdiction as to each defendant. *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). But, in this preliminary stage of litigation, that burden is light and if the court considers such motion without an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). The plaintiff "may make this showing through affidavits or other written materials" and "all factual

3


disputes are resolved in [plaintiff's] favor." *Dental Dynamics*, 946 F.3d at 1228. The Court views the allegations in Plaintiff's complaint as true if they are uncontroverted by the Defendant's affidavits. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

If the plaintiff makes the prima facie showing, the defendant "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## **DISCUSSION**

Plaintiff—an Oklahoma and Alabama company—is suing Defendant Jordan—a Mississippi company—in the Northern District of Oklahoma for alleged actions taken by Plaintiff Company's former employee. And the only connection between Plaintiff Company and Defendant Jordan is the former employee, who ended up working for Defendant Jordan. Such scenario is insufficient for this Court to have personal jurisdiction over Defendant Jordan.

**I.    Personal Jurisdiction**

"To establish personal jurisdiction over an out-of-state defendant, the plaintiff must make a prima facie showing that 'jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'" *C5 Medical Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (quoting *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010)).

Oklahoma's long-arm statute "authorizes courts to 'exercise jurisdiction on any basis consistent with the Constitution of [Oklahoma] and the Constitution of the United States.'" *Dental Dynamics*, 946 F.3d at 1229 (quoting Okla. Stat. Ann. tit. 12, § 2004(F)). Because Oklahoma's long-arm statute "permits the exercise of personal jurisdiction to the full extent permitted by the

United States Constitution," the Court's inquiry becomes a single due process analysis. *CTI Services LLC v. Haremza*, 2011 WL 2472566, at *3 (N.D. Okla. June 21, 2011) (quoting *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1998) (citing Okla. Stat. Ann. tit. 12, § 2004(F)).

### A. Due Process

The due process inquiry is two-fold. First, the out-of-state defendant must have "'purposefully established minimum contacts within the forum state'" and second, "'assertion of personal jurisdiction [must] comport with fair play and substantial justice.'" *C5 Medical Werks*, 937 F.3d at 1322–23 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The Court begins and ends with the minimum contacts analysis.

#### 1. Minimum Contacts

Minimum contacts can be satisfied in two ways. "First, the court may exert specific jurisdiction over a defendant," or second, "the court may maintain general personal jurisdiction over a defendant who has maintained continuous and systematic general business contacts with the forum state." *CTI Services*, 2011 WL at *3. As the parties correctly identify, general personal jurisdiction does not apply here because Defendant Jordan, a Mississippi Corporation, is not "essentially at home" in Oklahoma. *Daimler AG v. Bauman*, 571 U.S. at 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919)); *See* Doc. 21, at 3–5; Doc. 30, at 6 n.1. So, the Court focuses only on specific personal jurisdiction.

"Specific jurisdiction is very different." *Bristol-Myers Squibb Co. v. Super. Ct. of Ca., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). In order for a court to exercise specific jurisdiction over a defendant, the *suit* must arise out of or relate to the defendant's contacts with the *forum*. *Id.*;

*see also Daimler*, 571 U.S. at 127. In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919) (internal quotation marks and brackets omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 582 U.S. at 262 (internal quotation marks omitted).

Within the context of specific jurisdiction, "[t]he 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermillon Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Purposeful direction ensures that "an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475)). It "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of . . . *the unilateral activity of another party or a third person*, or the mere foreseeability that its actions may cause injury in that jurisdiction." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840–41 (10th Cir. 2020) (cleaned up) (emphasis added). And, notably, a plaintiff cannot be the only link between the defendant and the forum. "A defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction without additional contacts between the defendant and the forum state." *Dental Dynamics, LLC*, 946 F.3d at 1232–32 (collecting cases).

In tort-based actions, "purposeful direction has three elements: (1) an intentional action that was (b) expressly aimed at the forum states with (c) knowledge that the brunt of the injury would be felt in the forum states." *JCorps, Int'l*, 2021 WL at *3 (cleaned up). This is also referred to as the "harmful effects" framework, which the Tenth Circuit uses to determine whether a non-resident defendant's contacts with the forum satisfy the 'purposeful direction' requirement. *See XMission, L.C.*, 955 F.3d at 840–41.

Here, Plaintiff Company argues purposeful direction is met because "Jordan took intentional actions that were expressly aimed at Oklahoma with knowledge that the brunt of the injury would be felt in Oklahoma;" because "Jordan purposefully 'reached in' to Oklahoma by using Oklahoma trade secrets to do business in Oklahoma, to interfere with Oklahoma contracts, and to poach customers from an Oklahoma company;" and because "Jordan reached into Oklahoma and harmed an Oklahoma company." Doc. 30, at 7–9. Plaintiff relies on a case out of this district from 1998, *Nat'l Occupational Health Servs., Inc. v. Advanced Indus. Care*, 50 F. Supp. 2d 1111 (N.D. Okla. 1998), for the proposition that personal jurisdiction exists where a defendant tortiously interferes with a forum state contract. Doc. 30, at 8.

Plaintiff Company misses the mark. In *Nat'l Occupational Health Servs.*, it is certainly true that the court found that an Oklahoma contract between the plaintiff ("NOHS") and a third party ("MOST")—alleged to have been tortiously interfered with by the out-of-state defendant ("AIC")—conferred personal jurisdiction over AIC in this district. 50 F. Supp. 2d at 1117–1118. But in that case, the out-of-state defendant's conduct was far more expansive and involved with the plaintiff than Defendant Jordan's conduct here. For instance, that Oklahoma plaintiff *subcontracted* with that defendant to perform medical exams in California, then the plaintiff

7

ultimately alleged that this subcontractor interfered with an Oklahoma contract between NOHS and MOST. *Id.*

Rather, in situations involving an out-of-state defendant's tortious interference with the contractual rights of a forum resident, the Tenth Circuit has held that

> the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws.

*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). Here, the only link between Plaintiff Company and Defendant Jordan is its former employee, Gambe (a Mississippi resident) and that Defendant Jordan knew of the agreements between the two (based on an unspecified date when Plaintiff Company alerted Defendant Jordan of the agreements). Defendant Jordan was not a party to the contract, *see BG Products, Inc. v. Stinger Chemical, LLC*, 2015 WL 5029635, at *7 (D. Kan. Aug. 25, 2015) (collecting cases), was never involved in any way with the Oklahoma Plaintiff, and has not availed itself of Oklahoma's laws.

Plaintiff Company offers nothing more than mere allegations that Defendant had knowledge of the contract between Plaintiff Company and Gambe (knowledge that only existed because Plaintiff Company sent the agreements to Defendant Jordan *after* the alleged misconduct relating to trade secrets by Gambe) and that Plaintiff Company's former employee now works for Defendant Jordan. These tenuous allegations are merely incidental to the forum state and thus, are insufficient. *See Dental Dynamics, LLC*, at 1232 (alleged tortious conduct of the defendant was merely incidental to Oklahoma because the only effects felt in Oklahoma arose from the incidental fact that the plaintiff was located here). Overall, purposeful direction is "a product of both the

quantity and quality of a defendant's contacts with the forum," both of which are lacking here. *See XMissions, L.C.*, 955 F.3d at 840–41 (citing *OMI Holdings*, 149 F.3d at 1092).

Even assuming that Defendant Jordan purposefully directed its activities in Oklahoma, the second requirement of minimum contacts—that the litigation results from alleged injuries that arise out of or relate to defendant's purposeful activities—is missing. "The relationship between the defendant and the forum must arise from the contacts that '*defendant himself*' created with the forum state." *Service Experts, LLC v. Otte*, 609 F. Supp. 3d 1183, 1188 (D. Kan. July 1, 2022). "The analysis must focus on the defendant's contacts with the forum and not merely the defendant's contacts with persons who reside there." *Id.* at 1188–89 (internal quotation marks and citations omitted). Here, Plaintiff Company's entire lawsuit is predicated upon Gambe's (a citizen of Mississippi) actions against the Plaintiff Company. Defendant Jordan itself created no contacts with Oklahoma, Gambe did.

Because the Court concludes that Defendant Jordan lacks minimum contacts with Oklahoma—specifically, that Defendant Jordan did not purposefully direct any activities at Plaintiff Company in Oklahoma—it need not inquire into the final due process element, fair play and substantial justice.

## CONCLUSION

Plaintiff Company has not satisfied its burden of establishing that the Court has personal jurisdiction over Defendant Jordon. Therefore, Defendant Jordan Logistics, Inc.'s motion to dismiss for lack of personal jurisdiction (Doc. 20) is GRANTED and all claims against it in Plaintiff Company's complaint (Doc. 2-1) are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE